**Jon Loevy**
(*Pro hac vice* application forthcoming)
**Elizabeth Mazur**
(*Pro hac vice* application forthcoming)
**Elizabeth Wang**
(*Pro hac vice* application forthcoming)
**LOEVY & LOEVY**
312 North May Street, Suite 100
Chicago, IL 60607
Telephone: (312) 243-5900
jon@loevy.com
elizabethm@loevy.com
elizabethw@loevy.com


**Daniel J. Pochoda (AZ 021979)**
**Kelly J. Flood (AZ 019772)**
**James Duff Lyall (AZ 330045)**
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, AZ 85014
Telephone: (602) 650-1854
dpochoda@acluaz.org
kflood@acluaz.org
jlyall@acluaz.org

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| ALEXANDRIA LOXAS, as the surviving daughter of decedent JOHN LOXAS, JR.; and JOHN LOXAS, SR., on his own behalf and a surviving parent of decedent JOHN LOXAS, JR., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF SCOTTSDALE, JAMES PETERS; ALAN RODBELL, Scottsdale Police Chief; BRIAN MCWILLIAMS; and OTHER AS-YET UNKNOWN SCOTTSDALE POLICE OFFICERS, <br><br> Defendants. | CASE NO.: <br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Now come Plaintiffs, ALEXANDRIA LOXAS, as the surviving daughter of decedent JOHN LOXAS, JR.; and JOHN LOXAS, SR., as a surviving parent of decedent JOHN LOXAS, JR., and on his own behalf, by and through their attorneys, and complaining of Defendants: CITY OF SCOTTSDALE, Police Chief ALAN RODBELL, Officer JAMES PETERS, Detective BRIAN MCWILLLIAMS, OTHER AS-YET UNKNOWN SCOTTSDALE POLICE OFFICERS (collectively "Defendant Officers"), state as follows:

## INTRODUCTION

1. This action arises from the unjustified fatal shooting of John Loxas, Jr., by Scottsdale Police Officer James Peters. It is brought under 42 U.S.C. § 1983 to redress the deprivation under color of law of Loxas' rights as secured by the United States Constitution. Without any warning or legal justification, Officer Peters shot Mr. Loxas in the forehead killing him instantly. Mr. Loxas had no weapon in his hand or on his person; he was standing in the doorway of his house, holding his infant grandson, and turning away from the officers to go further inside his home when he was shot. This was the seventh shooting by Officer Peters in the past ten years, resulting in the unheard of number of six deaths. All the past shootings were found justified by Defendant Police Chief Alan Rodbell and the City of Scottsdale, and no discipline was imposed nor decision made to remove Peters from "shooter" assignments despite Defendants awareness of his propensity for shooting civilians. Thus, Defendant Peters felt justified in taking deadly action and was not deterred from doing so in this case despite the many alternatives presented. Following this shooting, Defendants Rodbell and Scottsdale found that Peters was disabled and entitled to retire with pay; this action was taken too late for John Loxas.

## JURISDICTION AND VENUE

2. This Action arises under the Constitution and laws of the United States and therefore this Court has jurisdiction pursuant to Title 28, Sections 1331 of the United States Code and directly under the United States Constitution.

3. The events and omissions giving rise to this Action occurred in this judicial district, and therefore venue is proper in this Court pursuant to Title 28, Section 1391(b) of the United States Code.

## PARTIES

4. John Loxas, Jr. ("Mr. Loxas"), was a 50-year old resident of Scottsdale, Arizona, when Scottsdale police officer James Peters shot and killed him on February 14, 2012.

5. At all times relevant hereto, Mr. Loxas lived in a single-family home at 7725 East Garfield Street in Scottsdale.

6. Plaintiff Alexandria Loxas is the surviving daughter of John Loxas, Jr.

7. Plaintiff John Loxas, Sr., is the surviving father of John Loxas, Jr. At all times relevant hereto, John Loxas, Sr., owned the single-family home at 7725 East Garfield where John Loxas, Jr., lived.

8. Under Arizona law, Alexandria Loxas and John Loxas, Sr., have standing to assert claims for the wrongful death of John Loxas, Jr. Accordingly, they also have standing to assert 42 U.S.C. § 1983 claims on behalf of John Loxas, Jr.

9. Defendant City of Scottsdale ("Scottsdale") is a legal and political municipal corporation existing under the laws of the State of Arizona. During the relevant time period, Scottsdale was the employer of Defendants Rodbell, Peters, McWilliams, and Other As-Yet Unknown Defendants. At all relevant times, the individual Defendants acted under color of law and within the scope of their employment as City of Scottsdale police officers, detectives or officials. Defendant Rodbell is the final decision-maker for

3

Scottsdale in matters pertaining to the Scottsdale Police Department including excessive force and use of weapons policies, internal investigations of excessive and deadly force, and assignment and discipline of police personnel.

10. Defendant Rodbell is the Police Chief of the Scottsdale Police Department and has held that position since 2003; he is sued in his individual capacity. He reviewed the internal investigations concerning the many deadly shootings by Defendant Peters and found the shootings justified and that no disciplinary or remedial actions were required for Peters. He also agreed with findings that other deaths resulting from Scottsdale officer shootings, including one that mirrored the facts that lead to the shooting of Mr. Loxas, were justified. As described within, his personal acts and failures to act despite his obligations as Chief, resulted in not only allowing a person with a demonstrated record of civilian deaths to maintain a weapon, but to be used in in the role of a shooter in operations against civilians. As a result of the decisions by Defendant Rodbell, Defendant Peters was not put on notice that use of deadly force should be a last resort particularly when dealing with an un-armed target holding an infant; Peters had no reason to be concerned that consequences would follow quick or questionable resort to firing a weapon even when failing to adequately warn the target and even when the shooting put an innocent third party at risk.

11. Defendant Brian McWilliams is employed by the City of Scottsdale as a detective with the Scottsdale Police Department.

**FACTS**

**The Fatal Shooting of John Loxas, Jr. by James Peters**

12. On February 14, 2012, John Loxas, Jr., was at his home with his seven-month-old grandson.

13. Around 6:00 p.m. that evening, Mr. Loxas got into a dispute with a neighbor who apparently called the police.

14. Soon thereafter, several Scottsdale police officers, including Defendant James Peters, approached Mr. Loxas's home. Mr. Loxas met the officers in the front doorway of his home.

15. At the time that Mr. Loxas encountered the officers, he was holding his infant grandson in his arms.

16. Without any warning or legal justification, Defendant James Peters shot Mr. Loxas in the forehead with a scope-equipped rifle, killing him instantly. None of the other officers at the scene fired a weapon.

17. Neither Defendant Peters nor the other officers on the scene attempted to defuse any risks the situation presented with less-than-lethal force. The first response by these officers to any potential problems presented by this situation was firing a bullet at the head of Mr. Loxas.

18. At the time of the shooting, Mr. Loxas had no gun or dangerous weapon of any type in his hand or on his person.

19. At the time of the shooting, Mr. Loxas was holding his grandson in front of him and between himself and the police.

20. While the police were present and prior to the shooting, Mr. Loxas had not threatened to harm his grandson in any manner; as a result of the shooting the grandson was dropped to the ground.

**Unlawful Search of Loxas Home**

21. Later that evening, Defendant Brian McWilliams obtained a warrant to search the Loxas home. In order to make it appear that there was probable cause for the court to issue a search warrant, Defendant McWilliams made false statements to the court, including, for example, that Mr. Loxas had appeared in his front doorway when the police arrived and was "waving a gun around."

22. The statement made in support of the request for a warrant was untrue. At no point did Mr. Loxas appear in the presence of any police officer holding any weapon.

23. The Loxas home was thereafter searched by Defendant Officer McWilliams and Other As-Yet Unknown Scottsdale police officers.

24. Scottsdale Police officials initially reported that no weapons were recovered in the Loxas home.

**Defendant Peters' History of Fatal Shootings and Use of Force**

25. Officer Peters has an extensive history of shooting and killing citizens in his capacity as a Scottsdale police officer.

26. In the last ten years, Officer Peters has shot six civilians, killing five of them. In addition to killing Mr. Loxas in February 2012, Officer Peters has been involved in the following shootings:

    a. In February 2010, Officer Peters shot Jimmy Hammack, causing injuries that resulted in Mr. Hammack's death. On information and belief, Mr. Hammack was unarmed at the time.

    b. In August 2006, Officer Peters shot and killed Kevin Hutchings. Mr. Hutchings' family members filed a lawsuit concerning the fatal shooting, which the City of Scottsdale resolved by settlement.

    c. In April 2006, Officer Peters shot and killed Brian Daniel Brown. The Scottsdale Police Department awarded Peters with a Medal of Valor for this shooting.

    d. In October 2005, Officer Peters shot and killed Mark Wesley Smith. On information and belief, Mr. Smith was unarmed at the time.

    e. In March 2003, Officer Peters shot and killed Brent Bradshaw, a former lawyer.

    f. In November 2002, Officer Peters, along with other Scottsdale police officers, shot Albert Redford. On information and belief, Mr. Redford was unarmed at the time.

27. In addition to these shootings, Officer Peters has a long history of use of force against civilians, including dozens of incidents involving the use of Tasers, other

projectiles and other firearms-related incidents.

28. In the three months leading up to the fatal shooting of Mr. Loxas, Officer Peters was the subject of four separate citizen complaints, two involving discrimination and two involving unprofessional conduct. None of these incidents or complaints resulted in discipline.

29. Around late 2002, Officer Peters was suspended for eight days and banned for two years from Field Training Officer duties for failing to intervene in a trainee's excessive use force, failing to document the incident, and admitting to making derogatory comments to the victim of the excessive force. In 2005, Officer Peters was reprimanded for mishandling his firearm after he pointed it at his face.

30. In recent years, Scottsdale Police Department officers have been involved in several controversial shootings of unarmed civilians.

31. On November 7, 2008, two SWAT team officers shot David Hulstedt in the back, leaving him paralyzed from the waist down. As with Mr. Loxas, the victim was holding a child in his arms, was walking towards the door of his home, and was unarmed when police opened fire. As with Mr. Loxas, police officers did not call out a warning prior to firing their weapons.

32. The shooting was reviewed by Scottsdale Police Department and Chief of Police and both officers' actions were determined to be "in policy." Neither City of Scottsdale nor the Scottsdale Police Department sought or implemented policy changes or disciplinary action in response to the shooting of Mr. Hulstedt.

33. Rather, City of Scottsdale and the Scottsdale Police Department defended their actions in a federal lawsuit brought by the family of Mr. Hulstedt. In granting partial summary judgment to Plaintiffs, federal District Court Judge Murray Snow concluded that "no reasonable officer could have believed that shooting David without warning, while he calmly walked back towards his house with D.H.[the young child] over his head, was a proper means of protecting D.H.'s safety."

34. The unusual finding of summary judgment against defendant police, thereby resolving the liability issue in favor of the victim concerning his Fourth Amendment allegations of excessive force under existing court precedents, demonstrates the inadequacy of the Scottsdale Police Department's investigatory process and the practice of Defendant Rodbell of failing to intervene to correct these inadequacies, and to justify any officer-involved shooting death no matter the circumstances and despite established law.

35. Scottsdale police personnel are familiar with the results of officer shooting investigations, and will conform their actions to the lessons taken from these investigations and determinations.

36. Defendant Rodbell's decisions to agree with all findings that police involved deadly shootings were justified and "within policy" was a direct cause of the illegal shooting of Mr. Loxas. Rodbell's actions and failures to act concerning the need to have effective internal investigatory processes and results that represent civilian as well as police interests, and in simply accepting the findings of "justified shooting," communicated to Defendant Peters that he was effectively immunized from disciplinary action under existing policies. As a result, the eventuality of unconstitutional violation and improper use of a weapon was or should have been obvious to both Defendant Rodbell and to Defendant Scottsdale.

37. The failure by Defendant Rodbell and Defendant Scottsdale to intervene in any manner, and to allow Defendant Peters to maintain a weapon for all purposes and to continue to be a point person in actions involving civilians even when a weapon might be required, demonstrates a reckless and callous disregard for the rights of such civilians, including Mr. Loxas. Defendant Rodbell's affirmative conduct set in motion a series of acts by others, including Defendant Peters, that he knew or reasonably should have known would result in these persons inflicting unconstitutional injury.

38. As the final decision-maker for Scottsdale on these matters, the above actions and decisions by Defendant Rodbell result in the liability of this municipality in the

unconstitutional practices of Defendant Rodbell and his officers, including Defendant Peters, involving the use of deadly force by shooting. The failure of Defendant Rodbell to adequately investigate such actions and to properly intervene when necessary to discipline or end the access of a known problem officer to police issued guns, is also attributable to Defendant Scottsdale.

39. On December 27, 2011, approximately two weeks prior to the shooting death of Mr. Loxas, another Scottsdale Police Department Officer shot and killed a Marine veteran who was holding a pool cue.

40. Scottsdale Police Department officials have acknowledged that Peters' history of shooting civilians is "an anomaly in our department, and in most departments."

41. In April 2012, Officer Peters submitted an accidental disability retirement application for review. In June 2012, the City of Scottsdale's Public Safety Personnel Retirement System board unanimously approved Officer Peters' application.

42. On information, Defendants Rodbell and Scottsdale were aware of the facts that justified the granting of Peters' application for a disability retirement prior to the shooting and death of John Loxas, Jr. The failure to timely act on this knowledge and permit an officer with such symptoms and known problems to remain on the force or, if still an employee, to alter his assignment and to remove his weapon, was directly related to the death of Mr. Loxas and a violation of his fundamental constitutional rights.

43. Six months after the fatal shooting of John Loxas by Officer Peters, the Scottsdale Police Department had yet to announce the result of its internal investigation of the propriety of the shooting.

**Scottsdale Police Department and City of Scottsdale Failed to Respond to Prior Incidents Involving Officer Peters and Enabled the Shooting of John Loxas**

44. Under Scottsdale Police Department policy, a Use of Force Review Board (UFRB) reviews all officer-involved fatal shootings and incidents involving the use of force resulting in serious injury.

9

45. Per policy, the UFRB does not review "any direct testimony from involved personnel or witnesses." In practice, the reviews rely almost entirely, if not exclusively on the involved officers' own version of events. The vast majority of reviewed incidents are determined to be "in policy." Officers are rarely sanctioned or disciplined for use of force incidents.

46. Internal Affairs investigations and criminal investigations are also conducted following use of force incidents resulting in serious injury. Internal Affairs (IA) conducts administrative investigations. Department detectives or another agency conducts criminal investigations. Findings from those investigations are brought to the UFRB.

47. The UFRB takes no disciplinary action, but submits its findings and makes recommendations to the Chief of Police via the chain of command, and in conjunction with Internal Affairs "when necessary."

48. Additionally, a case file is submitted to the Scottsdale County Attorney's Office, which convenes a Deadly Force Review Board.

49. Notwithstanding direct knowledge of Officer Peters' history of shooting civilians, including unarmed civilians, Defendant Rodbell and other supervisors in the Scottsdale Police Department failed to properly investigate and adequately review Officer Peters' prior incidents involving use of force, failed to act on the findings of those investigations, and allowed him to continue carrying his weapon and to conduct regular patrols.

50. The Scottsdale County Attorney's Office also investigated, but ultimately approved, each of Officer Peters' prior shootings.

51. Defendant Rodbell and the Scottsdale Police Department did not implement adequate policies or procedures to protect against the unreasonable use of force by its officers. Even following the 2008 shooting of an unarmed man, in the back and without warning, Rodbell and the Scottsdale Police Department made no changes to prevent similar outcomes. Rodbell and the Scottsdale Police Department did not

implement adequate and independent oversight and accountability mechanisms to review and discipline officers for misconduct including excessive use of force. For example, Scottsdale Police Department reviews rely heavily if not exclusively on officers' own version of events, and commonly rubber stamp officers' use of force as "in policy," without adequate investigation.

52. The City of Scottsdale was aware of the foregoing acts and omissions and failed to institute adequate policies, including regarding use of force, oversight, and accountability to prevent excessive use of force incidents from recurring. Defendant Scottsdale is liable for the unconstitutional acts and decisions of Defendant Rodbell, the final decision-maker in the area of police practices and policies for Scottsdale.

53. These acts and omissions by Rodbell, the Scottsdale Police Department and City of Scottsdale were directly related to providing the opportunity for James Peters to shoot and kill Mr. Loxas on February 14, 2012; the failures of Rodbell, the Scottsdale Police Department and Scottsdale, would inevitably result in a civilian death – and thus were causally connected to that of Mr. Loxas – as a result of an improper, unnecessary and illegal use of a weapon by a Scottsdale police officer.

## **SERVICE OF ARIZONA TORT CLAIMS NOTICES**

54. Plaintiffs complied with the requirements of A.R.S. §12-821.01, known as the tort claim statute, by serving written claims on the Defendants as set forth below:

    a. On June 25, 2012, Defendant City of Scottsdale was served with a written tort claim notice.

    b. On June 27, 2012, Defendant James Peters was served with a written tort claim notice.

    c. On July 2, 2012, Defendant Brian McWilliams was served with a written tort claim notice.

## COUNT I
### EXCESSIVE FORCE (42 U.S.C. § 1983)
### (Against Defendants James Peters, Alan Rodbell, City of Scottsdale, and Other As-Yet Unknown Defendants)

55. Plaintiffs incorporate the allegations stated in each Paragraph of this Complaint as if restated fully herein.

56. As described in the preceding paragraphs, the conduct of Defendant Officer Peters constituted excessive force against John Loxas, Jr., in violation of the United States Constitution; the conduct of Defendant Rodbell and Other As-Yet Unknown Defendants' failures to intervene or alter the status of Defendant Peters was causally connected to the illegal use of force against and death of Mr. Loxas.

57. The conduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Mr. Loxas's constitutional rights and to the resulting harm to Mr. Loxas and Plaintiffs.

58. The conduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

59. The conduct described in this Count was undertaken by Defendants Police Chief Rodbell, Officer Peters and Other As-Yet Unknown Defendants within the scope of their employment and under color of law such that their employer, City of Scottsdale, is liable for their actions.

60. As a result of this conduct, Plaintiffs suffered damages.

## COUNT II
### SUPERVISORY LIABILITY (42 U.S.C. § 1983)
### (Against Defendants Alan Rodbell and Other As-Yet Unknown Defendants)

61. Plaintiffs incorporate the allegations stated in each of the Paragraphs of this Complaint as if restated fully herein.

62. Defendant Alan Rodbell and Other As-Yet Unknown Defendants responsible for supervision of Officer James Peters knew that Officer Peters had a pattern

of shooting citizens without justification and that there was a substantial risk that Defendant Peters would cause serious physical harm to another Scottsdale resident.

63. Defendant Alan Rodbell and other As-Yet Unknown Defendant supervisors of Officer James Peters had a practice of "rubber stamping" use of deadly force by Scottsdale police officers without meaningful or adequate investigation. These Defendants knowingly and predictably increased the risk that unnecessary deadly force would be engaged in by officers as occurred in the shooting of John Loxas, and condoned or approved of Defendant Peters' demonstrated overreliance on deadly force resulting in the violation of John Loxas' rights.

64. The conduct described in this Count was undertaken with malice, willfulness, and deliberate indifference to the rights of others.

65. The conduct described in this Count was undertaken by Defendant Alan Rodbell and Other As-Yet Unknown Defendant supervisors of Officer James Peters within the scope of their employment and under color of law such that their employer, City of Scottsdale, is liable for their actions.

66. As a result of this conduct, Plaintiffs suffered damages.

## COUNT III
## UNLAWFUL SEARCH (42 U.S.C. § 1983)
### (Against Defendants Brian McWilliams, James Peters, City of Scottsdale, and Other As-Yet Unknown Defendants)

67. Plaintiffs incorporate the allegations stated in each Paragraph of this Complaint as if restated fully herein.

68. As described more fully above, Defendant Officers Brian McWilliams and James Peters, as well as Other As-Yet Unknown Defendant Officers, searched the Loxas home in a manner that violated the Fourth Amendment rights of John Loxas, Sr.

69. The conduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to the constitutional rights of others.

70. The conduct described in this Count was undertaken by the Defendant Officers within the scope of their employment and under color of law such that their employer, City of Scottsdale, is liable.

71. As a result of the conduct described in this Count, Plaintiff John Loxas, Sr., has suffered has suffered damages.

## COUNT IV
### FAILURE TO INTERVENE (42 U.S.C. § 1983)
### (Against As-Yet Unknown Defendants)

72. Plaintiffs incorporate the allegations stated in each of the Paragraphs of this Complaint as if restated fully herein.

73. Pleading in the alternative, certain As-Yet Unknown Defendants had a reasonable opportunity to prevent the violations of Plaintiffs' constitutional rights as described in this Complaint had they been so inclined, but failed to do so.

74. These officers' actions were undertaken intentionally, with malice and reckless indifference to Plaintiffs' rights.

75. As a direct and proximate result of the misconduct described in this Count, Plaintiffs' constitutional rights were violated, and Plaintiffs suffered damages.

## COUNT V
### MUNICIPAL LIABILITY (42 U.S.C. § 1983)
### (Against Defendant City of Scottsdale)

76. Plaintiff incorporates the allegations stated in each Paragraph of this Complaint as if restated fully herein.

77. As a matter of both policy and practice, Defendants Rodbell and the Scottsdale Police Department directly encourage, and are thereby the moving force behind, the very type of misconduct at issue here, by failing to adequately train, supervise and control its officers Their failure manifested deliberate indifference to the well being and fundamental rights of John Loxas.

78. Defendant Police Chief Rodbell is the final decision-maker for Scottsdale for police practices including the use of deadly force and concerning discipline

and officer re-assignments. His failures to take the necessary steps in these areas in order to reduce or end the ability of Defendant Peters to shoot and kill Mr. Loxas in a police operation are attributable to Defendant Scottsdale.

79. Generally, as a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Scottsdale Police Department fatally shoot citizens in a manner similar to the shooting at issue here on a frequent basis, yet Defendants Rodbell and City of Scottsdale conducted no meaningful review of these incidents and, on information, made no findings of wrongdoing.

80. As a matter of both policy and practice, Defendant Rodbell and the Scottsdale Police Department facilitate the very type of misconduct at issue here by failing to adequately investigate, punish, and discipline prior instances of unjustified police shootings, thereby leading Scottsdale Police Officers to believe that unjustified shootings will never be meaningfully scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiffs. As dramatically demonstrated by the above noted Hulstedt decision of unconstitutionality by Judge Snow at the Summary Judgment stage in a shooting by a Scottsdale officer in a fact pattern eerily close to that in the instant case, the failures by Rodbell and Scottsdale to adequately investigate deadly shootings and the decisions to find such shootings proper and "in policy" no matter how improper and unconstitutional, will inevitably result and have resulted in similar harmful acts by Scottsdale officers.

81. Scottsdale police officers who shoot citizens can be confident that Defendants Rodbell and City of Scottsdale will not investigate the shooting in earnest, and will not recommend discipline even where the shooting is unjustified. This confidence that they can act with impunity persuades at least some Scottsdale police officers to shoot first and ask questions later, confident in the knowledge that they can falsely justify even egregious shootings after the fact.

82. Municipal policy-makers are aware of, and condone and facilitate by their inaction, Defendant Rodbell's and the Scottsdale Police Department's failure to adequately train, supervise, and control its officers.

83. The City of Scottsdale has failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here.

84. As a result of the City of Scottsdale's policy and practice as described in this Count, Plaintiffs suffered damages.

## COUNT VI
### WRONGFUL DEATH – INTENTIONAL BATTERY (State Law Claim)
### (Against Defendant John Peters and Other As-Yet Unknown Defendants)

85. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

86. As described in the preceding Paragraphs of this Complaint, Officer Peters committed a wrongful act that caused Mr. Loxas' death.

87. Specifically, Officer Peters intentionally fired his weapon at John Loxas, Jr., causing a harmful or offensive contact with John Loxas, Jr., to occur. This harmful or offensive contact caused Mr. Loxas' death.

88. The conduct described in this Count was undertaken by Defendant Officer Peters within the scope of his employment and under color of law such that his employer, City of Scottsdale, is liable for his actions.

89. As a result of the conduct as described in this Count, Plaintiffs suffered damages.

## COUNT VII
### WRONGFUL DEATH – GROSS NEGLIGENCE (State Law Claim)
### (Against Defendant John Peters and Other As-Yet Unknown Defendants)

90. Each Paragraph of this Complaint is incorporated as if restated fully herein.

91. As described in the preceding Paragraphs of this Complaint, Officer Peters committed a wrongful act that caused Mr. Loxas' death.

92. Specifically, Officer Peters fired his weapon with reckless indifference to the result or the rights or safety of others. In doing so, Officer Peters breached his duty to refrain from such conduct.

93. The conduct described in this Count was undertaken by Defendant Officer Peters within the scope of his employment and under color of law such that his employer, City of Scottsdale, is liable for his actions.

94. As a result of the conduct as described in this Count, Mr. Loxas's death occurred and Plaintiffs suffered damages.

## COUNT VIII
### NEGLIGENT HIRING, SUPERVISION, OR RETENTION (State Law Claim)
### (Against As-Yet Unknown Defendants)

95. Each Paragraph of this Complaint is incorporated as if restated fully herein.

96. As described more fully above, Defendants Rodbell and City of Scottsdale and certain As-Yet Unknown Defendant supervisors of Officer James Peters were negligent in their hiring, supervision, and/or retention of Officer Peters.

97. The conduct described in this Count was a proximate cause of Mr. Loxas' death.

98. As a result of the conduct described in this Count, Plaintiffs suffered damages.

## COUNT IX
### TRESPASS (State Law Claim)
### (Against Defendants James Peters, Brian McWilliams, and Other As-Yet Unknown Defendants)

99. Each Paragraph of this Complaint is incorporated as if restated fully herein.

100. As described more fully above, Defendants James Peters, Brian McWilliams, and other As-Yet Unknown Defendant police officers intentionally entered and searched the Loxas home with a warrant procured through fraudulent means.

101. The conduct described in this Count was undertaken by the Defendant Officers within the scope of their employment and under color of law such that their employer, City of Scottsdale, is liable.

102. As a result of the conduct described in this Count, Plaintiff John Loxas, Sr., has suffered damages.

### DAMAGES

103. As a direct and proximate result of the breach of Plaintiffs' rights in each of the above mentioned claims for relief, Plaintiffs have suffered damages entitling them to substantial compensation for the illegal and unconstitutional acts by Defendants.

104. As set out above, the actions of the individual Defendants demonstrated a reckless disregard for the rights and well-being of Plaintiffs and an intent to harm Plaintiffs. Defendant Peters engaged in, and Defendant Rodbell allowed and ratified, an unheard of high number of shootings of civilians resulting in an alarming number of deaths. Exemplary damages are required as punishment and to deter Defendants from repeating these deadly and illegal acts in the future.

WHEREFORE, Plaintiffs, ALEXANDRIA LOXAS and JOHN LOXAS, SR., respectfully request that the Court enter judgment in their favor and against Defendants, CITY OF SCOTTSDALE, ALAN RODBELL, JAMES PETERS, and BRIAN MCWILLLIAMS, awarding compensatory damages, punitive damages, attorneys' fees and costs, and any other relief this Court deems just and appropriate.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Dated this 24th day of September, 2012

ACLU FOUNDATION OF ARIZONA

By /s/ Daniel J. Pochoda
Daniel J. Pochoda
Kelly J. Flood
James D. Lyall
3707 North 7th Street, Ste. 235
Phoenix, Arizona 85014
(602) 650-1854

-and-

LOEVY & LOEVY

Jon Loevy
(*Pro hac vice application forthcoming*)
Elizabeth Mazur
(*Pro hac vice application forthcoming*)
Elizabeth Wang
(*Pro hac vice application forthcoming*)
312 North May Street, Suite 100
Chicago, Illinois 60607
(312) 243-5900

*Attorneys for Plaintiffs*