Jon Loevy, *pro hac vice*
Elizabeth Mazur, *pro hac vice*
Elizabeth Wang, *pro hac vice*
Theresa Kleinhaus, *pro hac vice*
LOEVY & LOEVY
312 North May Street, Suite 100
Chicago, IL 60607
Telephone: (312) 243-5900
jon@loevy.com
elizabethm@loevy.com
elizabethw@loevy.com
tess.kleinhaus@gmail.com

Daniel J. Pochoda (AZ 021979)
Kelly J. Flood (AZ 019772)
James Duff Lyall (AZ 330045)
ACLU FOUNDATION OF ARIZONA
3707 North 7th Street, Suite 235
Phoenix, AZ 85014
Telephone: (602) 650-1854
dpochoda@acluaz.org
kflood@acluaz.org
jlyall@acluaz.org

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| ALEXANDRIA LOXAS, in her capacity as personal representative of the ESTATE OF JOHN LOXAS, JR., and as the surviving daughter of decedent JOHN LOXAS, JR., on her own behalf and on behalf of all who may have a statutory right of recovery; and JOHN LOXAS, SR., on his own behalf,<br><br>     Plaintiffs,<br><br>v.<br><br>CITY OF SCOTTSDALE, JAMES PETERS; ALAN RODBELL, Scottsdale Police Chief; BRIAN MCWILLIAMS; JOHN COCCA; SEAN DUGGAN; JOE KERTESZ; BERNIE HILL; MARC MCCOY; HUGH LOCKERBY; and OTHER AS-YET UNKNOWN SCOTTSDALE POLICE OFFICERS,<br><br>     Defendants. | CASE NO.: 2:12-cv-2015-DGC<br><br>**FIRST AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Now come Plaintiffs, ALEXANDRIA LOXAS, in her capacity as personal representative of the ESTATE OF JOHN LOXAS, JR., and as the surviving daughter of decedent JOHN LOXAS, JR., on her own behalf and on behalf of all who may have a statutory right of recovery; and JOHN LOXAS, SR., on his own behalf; by and through their attorneys, and complaining of Defendants: CITY OF SCOTTSDALE; Police Chief ALAN RODBELL; JAMES PETERS; BRIAN MCWILLLIAMS; JOHN COCCA; SEAN DUGGAN; JOE KERTESZ; BERNIE HILL; MARC MCCOY; HUGH LOCKERBY; and OTHER AS-YET UNKNOWN SCOTTSDALE POLICE OFFICERS (collectively "Defendant Officers"), state as follows:

### INTRODUCTION

1.      This action arises from the unjustified fatal shooting of John Loxas, Jr., by Scottsdale Police Officer James Peters. It is brought under 42 U.S.C. § 1983 to redress the deprivation under color of law of Loxas' rights as secured by the United States Constitution. Without any warning or legal justification, Officer Peters shot Mr. Loxas in the forehead killing him instantly. Mr. Loxas had no weapon in his hand or on his person; he was standing in the doorway of his house, holding his infant grandson when he was shot. This was the seventh shooting by Officer Peters in the past ten years, resulting in the unheard of number of six deaths. All the past shootings were found justified by Defendant Police Chief Alan Rodbell and the City of Scottsdale, and no discipline was imposed nor decision made to remove Peters from "shooter" assignments despite Defendants' awareness of his propensity for shooting civilians. Thus, Defendant Peters felt justified in taking deadly action and was not deterred from doing so in this case despite the many alternatives presented. Following this shooting, Defendants Rodbell and Scottsdale found that Peters was disabled and entitled to retire with pay; this action was taken too late for John Loxas.

## JURISDICTION AND VENUE

2.    This Action arises under the Constitution and laws of the United States and therefore this Court has jurisdiction pursuant to Title 28, Section 1331 of the United States Code and directly under the United States Constitution.

3.    The events and omissions giving rise to this Action occurred in this judicial district, and therefore venue is proper in this Court pursuant to Title 28, Section 1391(b) of the United States Code.

## PARTIES

4.    John Loxas, Jr. ("Mr. Loxas") was a 50-year old resident of Scottsdale, Arizona, when Scottsdale police officer James Peters shot and killed him on February 14, 2012.

5.    At all times relevant hereto, Mr. Loxas lived in a single-family home at 7725 East Garfield Street in Scottsdale.

6.    Plaintiff Alexandria Loxas is the surviving daughter of John Loxas, Jr.  Under Arizona law.  Ms. Loxas has standing assert claims for the wrongful death of John Loxas, Jr. on behalf of herself and on behalf all others who may have a statutory right of recovery under Arizona Revised Statutes § 12-612.

7.    Alexandria Loxas is also the court-appointed personal representative of the Estate of John Loxas, Jr., which was opened in the Superior Court of Maricopa County, Arizona, on or around February 15, 2013.  In this capacity, Ms. Loxas has standing to assert Section 1983 claims on behalf of John Loxas, Jr.

8.    Plaintiff John Loxas, Sr. owned the single-family home at 7725 East Garfield where John Loxas, Jr. lived at all relevant times hereto.

9.    Defendant City of Scottsdale ("Scottsdale") is a legal and political municipal corporation existing under the laws of the State of Arizona.  During the relevant time period, Scottsdale was the employer of Defendants Rodbell, Peters, McWilliams, Cocca, Duggan, Kertesz, Hill, McCoy, Lockerby, and Other As-Yet Unknown

Defendants.  At all relevant times, the individual Defendants acted under color of law and within the scope of their employment as City of Scottsdale police officers, detectives or officials.  Defendant Rodbell is the final decision-maker for Scottsdale in matters pertaining to the Scottsdale Police Department including excessive force and use of weapons policies, internal investigations of excessive and deadly force, and assignment and discipline of police personnel.

10.     Defendant Rodbell is the Police Chief of the Scottsdale Police Department and has held that position since 2003; he is sued in his individual capacity. He reviewed the internal investigations concerning the many deadly shootings by Defendant Peters and found the shootings justified and that no disciplinary or remedial actions were required for Peters.  He also agreed with findings that other deaths resulting from Scottsdale officer shootings, including one that mirrored the facts that led to the shooting of Mr. Loxas, were justified.  As described within, his personal acts and failures to act despite his obligations as Chief, resulted in not only allowing a person with a demonstrated record of civilian deaths to maintain a weapon, but to be used in the role of a shooter in operations against civilians.  As a result of the decisions by Defendant Rodbell, Defendant Peters was not put on notice that use of deadly force should be a last resort particularly when dealing with an un-armed target holding an infant; Peters had no reason to be concerned that consequences would follow quick or questionable resort to firing a weapon even when failing to adequately warn the target and even when the shooting put an innocent third party at risk.

11.     Defendant James Peters was employed by the City of Scottsdale by an officer with the Scottsdale Police Department. He killed John Loxas, Jr.

12.     Defendants John Cocca and Sean Duggan are employed by the City of Scottsdale as Assistant Chiefs of the Scottsdale Police Department. Defendants Cocca and Dugan had supervisory responsibility for Defendant James Peters during the course of his employment at the Scottsdale Police Department. Pursuant to Scottsdale Police Department policy, Defendants Cocca and Duggan were responsible for determining

4

whether Defendant James Peters should be returned to duty after his prior shootings of civilians. On information, Defendant Cocca and/or Defendant Duggan authorized James Peters to be returned to duty on each of those prior occasions, thereby allowing a person with a demonstrated record of civilian deaths to maintain a weapon, and to be used in the role of a shooter in further operations against civilians.

13. Defendant Joe Kertesz is employed by the City of Scottsdale as a lieutenant with the Scottsdale Police Department. Defendant Kertesz reported to the scene of the fatal shooting of John Loxas, Jr., and assumed control of the scene for the purpose of the subsequent police investigation.

14. Defendants Brian McWilliams, Marc McCoy, and Hugh Lockerby are employed by the City of Scottsdale as detectives with the Scottsdale Police Department Violent Crimes Unit. Defendants McWilliams, McCoy, and Lockerby participated in the initial investigation of the fatal shooting of John Loxas Jr.

15. Defendant Bernie Hill is employed by the City of Scottsdale as the supervising sergeant of the Scottsdale Police Department Violent Crimes Unit. Defendant Hill supervised the initial investigation of the fatal shooting of John Loxas, Jr.

<u>FACTS</u>

**The Fatal Shooting of John Loxas, Jr. by James Peters**

16. On February 14, 2012, Mr. Loxas was at his home with his seven-month-old grandson.

17. Around 6:00 p.m. that evening, Mr. Loxas got into a dispute with a neighbor who called the police.

18. Soon thereafter, several Scottsdale police officers, including Defendant James Peters, approached Mr. Loxas's home. Mr. Loxas met the officers in the front doorway of his home.

19. At the time that Mr. Loxas encountered the officers, he was holding his infant grandson in his arms.

20.     Without any warning or legal justification, Defendant James Peters shot Mr. Loxas in the forehead with a scope-equipped rifle, killing him instantly.  None of the other officers at the scene fired a weapon.

21.     Neither Defendant Peters nor the other officers on the scene attempted to defuse any risks the situation presented with less-than-lethal force.

22.     At the time of the shooting, Mr. Loxas had no gun or dangerous weapon of any type in his hand or on his person.

23.     At the time of the shooting, Mr. Loxas was holding his grandson in front of him and between himself and the police.

24.     While the police were present and prior to the shooting, Mr. Loxas had not threatened to harm his grandson in any manner; as a result of the shooting the grandson was dropped to the ground.

### Unlawful Search of Loxas Home

25.     Immediately after the shooting, several other Scottsdale police officers reported to the scene of the shooting. Defendant Lieutenant Joe Kertesz assumed control of the scene.  Several detectives from the Scottsdale Police Department Violent Crimes Unit also reported to the scene to initiate an investigation, including Defendants Sergeant Bernie Hill, Detective Brian McWilliams, Detective Marc McCoy, and Detective Hugh Lockerby.

26.     At the scene, Lieutenant Kertesz held a "briefing" during which he related information about the incident to investigating officers at the scene.

27.     At the briefing, Lieutenant Kertesz reported that Scottsdale Police Officer Dave Alvarado had seen John Loxas "waving a gun around" in front of police prior to the shooting.  This statement was false.  At no point that evening did Mr. Loxas appear in the presence of any police officer holding any weapon.

28.     Sergeant Hill assigned Detective Lockerby the task of the overall scene documentation and investigation.

29. Sergeant Hill assigned Detective McWilliams the task of obtaining a search warrant of the Loxas home, with Detective McCoy to assist him. Detective McWilliams returned to the police station, where he spent one to two hours drafting the warrant, with Detective McCoy sitting at his side. As Detective McWilliams was drafting the warrant, he was getting updates about the investigation via Detective McCoy, who was in telephone communication with other detectives investigating the incident.

30. Detective McWilliams submitted his search warrant application to the court at approximately 10:20 p.m. By this time, it was known to investigators that Officer Alvarado had not seen Mr. Loxas waving a gun around. In fact, when detectives interviewed Officer Alvarado two hours earlier, at 8:20 p.m., Officer Alvarado unequivocally stated that he did not see John Loxas with a weapon. Thus, by the time that Detective McWilliams submitted his warrant application, investigators from whom he was getting updates knew that no officer had seen John Loxas "waving a gun around" prior to the shooting.

31. Even though Lieutenant Kertesz's initial statement had proven false, Detective McWilliams nevertheless included the false statement in his warrant application to the court, to ensure that the search warrant would issue.

32. Around 11:45 p.m., Detective McWilliams obtained the signed search warrant from the court and brought it to investigators at the scene, who decided to conduct the search of the home the next morning.

33. The next morning, Detectives McWilliams, Lockerby, McCoy and Hill searched the Loxas home pursuant to the warrant. By the time these Defendants executed the search warrant, they knew that the facts in the warrant about Mr. Loxas "waving" a gun around in the presence of a police officer were false and that the warrant was therefore defective.

**Defendant Peters' History of Fatal Shootings and Use of Force**

34. Officer Peters has an extensive history of shooting and killing citizens in his capacity as a Scottsdale police officer.

35.     In the last ten years, Officer Peters has shot six civilians, killing five of them.  In addition to killing Mr. Loxas in February 2012, Officer Peters has been involved in the following shootings:

a.     In February 2010, Officer Peters shot Jimmy Hammack, causing injuries that resulted in Mr. Hammack's death.  On information and belief, Mr. Hammack was unarmed at the time.

b.     In August 2006, Officer Peters shot and killed Kevin Hutchings.  Mr. Hutchings' family members filed a lawsuit concerning the fatal shooting, which the City of Scottsdale resolved by settlement.

c.     In April 2006, Officer Peters shot and killed Brian Daniel Brown.  The Scottsdale Police Department awarded Peters with a Medal of Valor for this shooting.

d.     In October 2005, Officer Peters shot and killed Mark Wesley Smith.  On information and belief, Mr. Smith was unarmed at the time.

e.     In March 2003, Officer Peters shot and killed Brent Bradshaw, a former lawyer.

f.     In November 2002, Officer Peters, along with other Scottsdale police officers, shot Albert Redford.  On information and belief, Mr. Redford was unarmed at the time.

36.     In addition to these shootings, Officer Peters has a long history of use of force against civilians, including dozens of incidents involving the use of Tasers, other projectiles and other firearms-related incidents.

37.     As early as 2003, it was noted in one of Officer Peters' Scottsdale Police Department job evaluations that he had a "reputation in [the] department as an officer who is very quick to escalate force levels," and he was given the advice to "tone it down a bit."

38.     Around late 2002, Officer Peters was suspended for eight days and banned for two years from Field Training Officer duties for failing to intervene in a

trainee's excessive use of force, failing to document the incident, and admitting to making derogatory comments to the victim of the excessive force. In 2005, Officer Peters was reprimanded for mishandling his firearm after he pointed it at his face.

39. In the three months leading up to the fatal shooting of Mr. Loxas, Officer Peters was the subject of four separate citizen complaints, two involving discrimination and two involving unprofessional conduct. None of these incidents or complaints resulted in discipline.

40. In recent years, Scottsdale Police Department officers have been involved in several controversial shootings of unarmed civilians.

41. On November 7, 2008, two SWAT team officers shot David Hulstedt in the back, leaving him paralyzed from the waist down. As with Mr. Loxas, the victim was holding a child in his arms, was walking towards the door of his home, and was unarmed when police opened fire. As with Mr. Loxas, police officers did not call out a warning prior to firing their weapons.

42. The shooting was reviewed by Scottsdale Police Department and Chief of Police and both officers' actions were determined to be "in policy." Neither City of Scottsdale nor the Scottsdale Police Department sought or implemented policy changes or disciplinary action in response to the shooting of Mr. Hulstedt.

43. Rather, City of Scottsdale and the Scottsdale Police Department defended their actions in a federal lawsuit brought by the family of Mr. Hulstedt. In granting partial summary judgment to Plaintiffs, federal District Court Judge Murray Snow concluded that "no reasonable officer could have believed that shooting David without warning, while he calmly walked back towards his house with D.H.[the young child] over his head, was a proper means of protecting D.H.'s safety."

44. The unusual finding of summary judgment against defendant police, thereby resolving the liability issue in favor of the victim concerning his Fourth Amendment allegations of excessive force under existing court precedents, demonstrates the inadequacy of the Scottsdale Police Department's investigatory process and the

practice of Defendant Rodbell of failing to intervene to correct these inadequacies, and to justify any officer-involved shooting death no matter the circumstances and despite established law.

45.   Scottsdale police personnel are familiar with the results of officer shooting investigations, and will conform their actions to the lessons taken from these investigations and determinations.

46.   Defendant Rodbell's decisions to agree with all findings that police involved deadly shootings were justified and "within policy" was a direct cause of the illegal shooting of Mr. Loxas.  Rodbell's actions and failures to act concerning the need to have effective internal investigatory processes and results that represent civilian as well as police interests, and in simply accepting the findings of "justified shooting," communicated to Defendant Peters that he was effectively immunized from disciplinary action under existing policies.  As a result, the eventuality of unconstitutional violation and improper use of a weapon was or should have been obvious to both Defendant Rodbell and to Defendant Scottsdale.

47.   The failure by Defendants Rodbell, Cocca, Duggan, and City of Scottsdale to intervene in any manner, and to allow Defendant Peters to maintain a weapon for all purposes and to continue to be a point person in actions involving civilians even when a weapon might be required, demonstrates a reckless and callous disregard for the rights of such civilians, including Mr. Loxas. Defendant Rodbell's affirmative conduct set in motion a series of acts by others, including Defendant Peters, that he knew or reasonably should have known would result in these persons inflicting unconstitutional injury.

48.   As the final decision-maker for Scottsdale on these matters, the above actions and decisions by Defendant Rodbell result in the liability of this municipality in the unconstitutional practices of Defendant Rodbell and his officers, including Defendant Peters, involving the use of deadly force by shooting.  The failure of Defendant Rodbell to adequately investigate such actions and to properly intervene when necessary to discipline

or end the access of a known problem officer to police issued guns, is also attributable to Defendant Scottsdale.

49.     On or around January 22, 2012, approximately two weeks prior to the shooting death of Mr. Loxas, another Scottsdale Police Department Officer shot and killed a Marine veteran who was holding a pool cue.

50.     Scottsdale Police Department officials have acknowledged that Peters' history of shooting civilians is "an anomaly in our department, and in most departments."

51.     In April 2012, Officer Peters submitted an accidental disability retirement application for review.  In June 2012, the City of Scottsdale's Public Safety Personnel Retirement System board unanimously approved Officer Peters' application.

52.     On information, Defendants Rodbell, Cocca, and Scottsdale were aware of the facts that justified the granting of Peters' application for a disability retirement prior to the shooting and death of John Loxas, Jr.  The failure to timely act on this knowledge and permit an officer with such symptoms and known problems to remain on the force or, if still an employee, to alter his assignment and to remove his weapon, was directly related to the death of Mr. Loxas and a violation of his fundamental constitutional rights.

53.     More than one year after the fatal shooting of John Loxas by Officer Peters, the Scottsdale Police Department had yet to announce the result of its internal investigation of the propriety of the shooting.

**Scottsdale Police Department and City of Scottsdale Failed to Respond to Prior Incidents Involving Officer Peters and Enabled the Shooting of John Loxas**

54.     Under Scottsdale Police Department policy, a Use of Force Review Board (UFRB) reviews all officer-involved fatal shootings and incidents involving the use of force resulting in serious injury.

55. Per policy, the UFRB does not review "any direct testimony from involved personnel or witnesses." In practice, the reviews rely almost entirely, if not exclusively on the involved officers' own version of events. The vast majority of reviewed incidents are determined to be "in policy." Officers are rarely sanctioned or disciplined for use of force incidents.

56. Internal Affairs investigations and criminal investigations are also conducted following use of force incidents resulting in serious injury. Internal Affairs (IA) conducts administrative investigations. Department detectives or another agency conducts criminal investigations. Findings from those investigations are brought to the UFRB.

57. The UFRB takes no disciplinary action, but submits its findings and makes recommendations to the Chief of Police via the chain of command, and in conjunction with Internal Affairs "when necessary."

58. Notwithstanding direct knowledge of Officer Peters' history of shooting civilians, including unarmed civilians, Defendants Rodbell, Cocca, Duggan, and other supervisors in the Scottsdale Police Department failed to properly investigate and adequately review Officer Peters' prior incidents involving use of force, failed to act on the findings of those investigations, and allowed him to continue carrying his weapon and to conduct regular patrols.

59. Defendant Rodbell and the Scottsdale Police Department did not implement adequate policies or procedures to protect against unnecessary and unreasonable use of force by its officers. Even following the 2008 shooting of an unarmed man, in the back and without warning, Rodbell and the Scottsdale Police Department made no changes to prevent similar outcomes. Rodbell and the Scottsdale Police Department did not implement adequate and independent oversight and accountability mechanisms to review and discipline officers for misconduct including excessive use of force. For example, Scottsdale Police Department reviews rely heavily if

not exclusively on officers' own version of events, and commonly rubber stamp officers' use of force as "in policy," without adequate investigation.

60. The City of Scottsdale was aware of the foregoing acts and omissions and failed to institute adequate policies, including regarding use of force, oversight, and accountability to prevent excessive use of force incidents from recurring. Defendant Scottsdale is liable for the unconstitutional acts and decisions of Defendant Rodbell, the final decision-maker in the area of police practices and policies for Scottsdale.

61. These acts and omissions by Rodbell, Cocca, Duggan, the Scottsdale Police Department, and City of Scottsdale were directly related to providing the opportunity for James Peters to shoot and kill Mr. Loxas on February 14, 2012; the failures of Rodbell, Cocca, Duggan, the Scottsdale Police Department, and Scottsdale, would inevitably result in a civilian death – and thus were causally connected to that of Mr. Loxas – as a result of an improper, unnecessary and illegal use of a weapon by a Scottsdale police officer.

**SERVICE OF ARIZONA TORT CLAIMS NOTICES**

62. Plaintiffs complied with the requirements of A.R.S. §12-821.01, known as the tort claim statute, by serving written claims on the Defendants as set forth below:

a. On June 25, 2012, Defendant City of Scottsdale was served with a written tort claim notice.

b. On June 27, 2012, Defendant James Peters was served with a written tort claim notice.

c. On July 2, 2012, Defendant Brian McWilliams was served with a written tort claim notice.

d. On October 15, 2012, Defendant Alan Rodbell was served with a written tort claim notice. The state law cause of action therein against Defendant Alan Rodbell did not accrue until July 2012, when the City of Scottsdale responded to a

Freedom of Information Act request, which provided Plaintiffs with information allowing them to discover Defendant Rodbell's culpability in the death of Mr. Loxas.

**COUNT I**
**EXCESSIVE FORCE (42 U.S.C. § 1983)**
**(Against Defendant James Peters)**

63.    Plaintiffs incorporate the allegations stated in each Paragraph of this Complaint as if restated fully herein.

64.    As described in the preceding paragraphs, the conduct of Defendant Officer Peters constituted excessive force against John Loxas, Jr. in violation of the United States Constitution.

65.    The conduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Mr. Loxas's constitutional rights.

66.    The conduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

67.    The conduct described in this Count was undertaken by Defendant Peters under color of law and within the scope of his employment.

68.    As a result of this conduct, John Loxas, Jr. suffered damages.

**COUNT II**
**EXCESSIVE FORCE SUPERVISORY LIABILITY (42 U.S.C. § 1983)**
**(Against Defendants Alan Rodbell, John Cocca, Sean Duggan, and Other As-Yet Unknown Defendants)**

69.    Plaintiffs incorporate the allegations stated in each of the Paragraphs of this Complaint as if restated fully herein.

70.    Defendants Alan Rodbell, John Cocca, Sean Duggan, and Other As-Yet Unknown Defendants were responsible for supervision of Officer James Peters, knew that Officer Peters had a pattern of shooting citizens unnecessarily and without justification, and knew that there was a substantial risk that Defendant Peters would cause serious physical harm to another Scottsdale resident.

71. These Defendants had a practice of "rubber stamping" the use of deadly force by Scottsdale police officers without meaningful or adequate investigation. In addition, these Defendants authorized James Peters to return to duty after each of his prior civilian shootings, notwithstanding the obvious risk that he presented to civilians. These Defendants thus knowingly and predictably increased the risk that unnecessary deadly force would be engaged in by officers as occurred in the shooting of John Loxas, and condoned or approved of Defendant Peters' demonstrated overreliance on deadly force resulting in the violation of Mr. Loxas' rights.

72. The conduct described in this Count was undertaken with malice, willfulness, and deliberate indifference to the rights of others.

73. The conduct described in this Count was undertaken by these Defendants within the scope of their employment and under color of law.

74. As a result of this conduct, John Loxas, Jr. suffered damages.

## COUNT III
### UNLAWFUL SEARCH (42 U.S.C. § 1983)
### (Against Defendants Brian McWilliams, Bernie Hill, Marc McCoy, Hugh Lockerby, and Other As-Yet Unknown Defendants)

75. Plaintiffs incorporate the allegations stated in each Paragraph of this Complaint as if restated fully herein.

76. As described more fully above, Defendants Brian McWilliams, Bernie Hill, Marc McCoy, Hugh Lockerby, and Other As-Yet Unknown Defendants searched the Loxas home in a manner that violated the Fourth Amendment rights of John Loxas, Sr.

77. The conduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to the constitutional rights of others.

78. The conduct described in this Count was undertaken by these Defendants within the scope of their employment and under color of law.

79. As a result of the conduct described in this Count, Plaintiff John Loxas, Sr. suffered damages.

## COUNT IV
### UNLAWFUL SEARCH FAILURE TO INTERVENE (42 U.S.C. § 1983)
### (Against Defendants Marc McCoy, Brian McWilliams, Hugh Lockerby, and Other As-Yet Unknown Defendants)

80. Plaintiffs incorporate the allegations stated in each Paragraph of this Complaint as if restated fully herein.

81. Pleading in the alternative, Defendants Brian McWilliams, Bernie Hill, Marc McCoy, and Hugh Lockerby had a reasonable opportunity to intervene to prevent one another from violating the Fourth Amendment rights of John Loxas, Sr. but failed to do so.

82. The conduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to the constitutional rights of others.

83. The conduct described in this Count was undertaken by these Defendants within the scope of their employment and under color of law.

84. As a result of the conduct described in this Count, Plaintiff John Loxas, Sr. suffered damages.

## COUNT V
### UNLAWFUL SEARCH SUPERVISORY LIABILITY (42 U.S.C. § 1983)
### (Against Defendants Joe Kertesz, Bernie Hill, and Other As-Yet Unknown Defendants)

85. Plaintiffs incorporate the allegations stated in each of the Paragraphs of this Complaint as if restated fully herein.

86. As described more fully above, Defendants Joe Kertesz, Bernie Hill, and Other As-Yet Unknown Defendants set in motion a serious of acts by others which they knew or reasonably should have known would result in the unlawful search of the Loxas home.

16

87.     The conduct described in this Count was undertaken with malice, willfulness, recklessness and deliberate indifference to the rights of others.

88.     The conduct described in this Count was undertaken by these Defendants within the scope of their employment and under color of law.

89.     As a result of the conduct described in this Count, Plaintiff John Loxas Sr. suffered damages.

**COUNT VI**
**MUNICIPAL LIABILITY (42 U.S.C. § 1983)**
**(Against Defendant City of Scottsdale)**

90.     Plaintiff incorporates the allegations stated in each Paragraph of this Complaint as if restated fully herein.

91.     As a matter of both policy and practice, Defendants Rodbell and the Scottsdale Police Department directly encourage, and are thereby the moving force behind, the very type of misconduct at issue here, by failing to adequately train, supervise and control its officers. Their failure manifested deliberate indifference to the well being and fundamental rights of John Loxas.

92.     Defendant Police Chief Rodbell is the final decision-maker for Scottsdale for police practices including the use of deadly force and concerning discipline and officer re-assignments.

93.     His failures to take the necessary steps in these areas in order to reduce or end the ability of Defendant Peters to shoot and kill Mr. Loxas in a police operation are attributable to Defendant Scottsdale.

94.     Generally, as a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Scottsdale Police Department fatally shoot citizens in a manner similar to the shooting at issue here on a frequent basis, yet Defendants Rodbell and City of Scottsdale conducted no meaningful review of these incidents and, on information, made no findings of wrongdoing, nor made any alterations to policy to reduce the incidence of such shootings.

95.     As a matter of both policy and practice, Defendant Rodbell and the Scottsdale Police Department facilitate the very type of misconduct at issue here by failing to adequately investigate, punish, and discipline prior instances of unjustified police shootings, thereby leading Scottsdale police officers to believe that unjustified shootings will never be meaningfully scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiffs.  As dramatically demonstrated by the above noted Hulstedt decision of unconstitutionality by Judge Snow at the Summary Judgment stage in a shooting by a Scottsdale officer in a fact pattern eerily close to that in the instant case, the failures by Rodbell and Scottsdale to adequately investigate deadly shootings and the decisions to find such shootings proper and "in policy" no matter how improper and unconstitutional, will inevitably result and have resulted in similar harmful acts by Scottsdale officers.

96.     Scottsdale police officers who shoot citizens can be confident that Defendants Rodbell and City of Scottsdale will not investigate the shooting in earnest, and will not recommend discipline even where the shooting is unjustified.  This confidence that they can act with impunity persuades at least some Scottsdale police officers to shoot first and ask questions later, confident in the knowledge that they can falsely justify even egregious shootings after the fact.

97.     Municipal policy-makers are aware of, and condone and facilitate by their inaction, Defendant Rodbell's and the Scottsdale Police Department's failure to adequately train, supervise, and control its officers.

98.     The City of Scottsdale has failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here.

99.     As a result of the City of Scottsdale's policy and practice as described in this Count, John Loxas, Jr. suffered damages.

## COUNT VII
### WRONGFUL DEATH – INTENTIONAL BATTERY (State Law Claim)
### (Against Defendants James Peters and City of Scottsdale)

100.    Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

101.    As described in the preceding Paragraphs of this Complaint, Officer Peters committed a wrongful act that caused Mr. Loxas' death.

102.    Specifically, Officer Peters intentionally fired his weapon at John Loxas, Jr., causing a harmful or offensive contact with John Loxas, Jr. to occur.  This harmful or offensive contact caused Mr. Loxas' death.

103.    The conduct described in this Count was undertaken by Defendant Officer Peters within the scope of his employment such that the City of Scottsdale is liable for his actions under the doctrine of *respondeat superior*.

104.    As a result of the conduct as described in this Count, Plaintiff Alexandria Loxas and others entitled to recovery under A.R.S. § 12-612 suffered damages.

## COUNT VIII
### WRONGFUL DEATH – GROSS NEGLIGENCE (State Law Claim)
### (Against Defendants James Peters and City of Scottsdale)

105.    Each Paragraph of this Complaint is incorporated as if restated fully herein.

106.    As described in the preceding Paragraphs of this Complaint, Officer Peters committed a wrongful act that caused Mr. Loxas' death.

107.    Specifically, Officer Peters fired his weapon with reckless indifference to the result or the rights or safety of others.  In doing so, Officer Peters breached his duty to refrain from such conduct.

108.    The conduct described in this Count was undertaken by Defendant Officer Peters within the scope of his employment such that the City of Scottsdale is liable for his actions under the doctrine of *respondeat superior*.

19

109.    As a result of the conduct as described in this Count, Plaintiff Alexandra Loxas and others entitled to recovery under A.R.S. § 12-612 suffered damages.

**COUNT IX**
**NEGLIGENT HIRING, SUPERVISION, OR RETENTION (State Law Claim)**
**(Against Defendants Alan Rodbell and City of Scottsdale)**

110.    Each Paragraph of this Complaint is incorporated as if restated fully herein.

111.    As described more fully above, Defendants Rodbell and other agents of the City of Scottsdale were negligent in their hiring, supervision, and/or retention of Officer Peters.

112.    The conduct described in this Count was undertaken by agents of the City of Scottsdale acting within the scope of their employment, such that the City of Scottsdale is liable under the doctrine of *respondeat superior*.

113.    The conduct described in this Count was a proximate cause of Mr. Loxas' death.

114.    As a result of the conduct described in this Count, Plaintiffs Alexandria Loxas and others entitled to recovery under A.R.S. § 12-612 suffered damages.

**COUNT X**
**TRESPASS (State Law Claim)**
**(Against Defendants Brian McWilliams and City of Scottsdale)**

115.    Each Paragraph of this Complaint is incorporated as if restated fully herein.

116.    As described more fully above, Brian McWilliams and other agents of the City of Scottsdale intentionally entered and searched the Loxas home without lawful authority to do so.

117.    The conduct described in this Count was undertaken by agents of the City of Scottsdale acting within the scope of their employment, such that the City of Scottsdale is liable under the doctrine of *respondeat superior*.

1      118.    As a result of the conduct described in this Count, Plaintiff John

2   Loxas, Sr. suffered damages.

3                                    **DAMAGES**

4      119.    As a direct and proximate result of the breach of Plaintiffs' rights in

5   each of the above mentioned claims for relief, Plaintiffs have suffered damages entitling

6   them to substantial compensation for the illegal and unconstitutional acts by Defendants.

7      120.    As set out above, the actions of the individual Defendants

8   demonstrated a reckless disregard for the rights and well-being of Plaintiffs and an intent

9   to harm Plaintiffs.  Defendant Peters engaged in, and Defendant Rodbell allowed and

10  ratified, an unheard of high number of shootings of civilians resulting in an alarming

11  number of deaths. To the extent authorized by law, exemplary damages are required as

12  punishment and to deter Defendants from repeating these deadly and illegal acts in the

13  future.

14

15      WHEREFORE, Plaintiffs, ALEXANDRIA LOXAS and JOHN LOXAS,

16  SR. respectfully request that the Court enter judgment in their favor and against

17  Defendants, CITY OF SCOTTSDALE, ALAN RODBELL, JAMES PETERS, BRIAN

18  MCWILLLIAMS, JOHN COCCA, SEAN DUGGAN, JOE KERTESZ, BERNIE HILL,

19  MARC MCCOY, and HUGH LOCKERBY, awarding compensatory damages; punitive

20  damages, to the extent authorized by law; attorneys' fees and costs; and any other relief

21  this Court deems just and appropriate.

22

23

24

25

26

27

28

**JURY DEMAND**

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Dated this 15th day of March, 2013

ACLU FOUNDATION OF ARIZONA

By /s/ Daniel J. Pochoda
Daniel J.  Pochoda
Kelly J. Flood
James D. Lyall
3707 North 7th Street, Ste. 235
Phoenix, Arizona 85014
(602) 650-1854

-and-

LOEVY & LOEVY

By /s/ Jon Loevy
Jon Loevy, *pro hac vice*
Elizabeth Mazur, *pro hac vice*
Elizabeth Wang, *pro hac vice*
Theresa Kleinhaus, *pro hac vice*
LOEVY & LOEVY
312 North May Street, Suite 100
Chicago, Illinois 60607
(312) 243-5900

*Attorneys for Plaintiffs*

ORIGINAL electronically filed
this 15th day of March, 2013.

COPY mailed/e-mailed
this 15th day of March, 2013, to:

Hon. David G. Campbell
United States District Court
Sandra Day O'Connor U.S. Courthouse
401 West Washington Street, SPC 58
Suite 623
Phoenix, AZ  85003-2156
602-322-7645

Georgia A. Staton
Michele Molinario
JONES, SKELTON & HOCHULI, P.L.C.
2901 North Central Avenue, Suite 800
Phoenix, AZ  85012

Kathleen L. Wieneke
Christina Retts
STRUCK, WIENEKE, & LOVE
3100 West Ray Road, Suite 300
Chandler, AZ  85226

By  /s/ Elizabeth Mazur